Jesús María Texidor Díaz et al., peticionarios, *v.* Tribunal Superior, Sala de Guayama, Puerto Rico, Hon. Ángel D. Marchand Paz, Juez, demandado; Carmen Texidor Laboy, interventora.

*Número:* C-65-57          *Resuelto:* 7 de junio de 1967

*Gabriel De La Haba* y *Carlos Martínez Texidor,* abogados de los peticionarios; *Elmer Toro Lucchetti, Segurola, Romero & Toledo,* abogados de la interventora.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

El 10 de enero de 1951 Carmen Texidor Laboy presentó demanda en la sección de Guayama del anterior Tribunal de Distrito, alegando ser hija natural reconocida de Manuel Texidor Díaz. La acción se basó en la alegada posesión contínua del estado de hija natural, justificada por actos del supuesto padre y de las personas con derecho a su herencia. Luego de varios incidentes, el 10 de diciembre de 1952 presentó demanda enmendada en la que sustancialmente reprodujo las alegaciones de la demanda original con la excepción

de que en esta ocasión también alegó haber sido reconocida mediante partida bautismal. (¹)

Contra ambas demandas los aquí recurrentes interpusieron moción en la que, entre otras cosas, solicitaron la desestimación por haber expirado el término prescriptivo que señala el Art. 126 del Código Civil, 31 L.P.R.A. sec. 505. Mediante Resolución de 13 de septiembre de 1957 el Tribunal Superior, Sala de Guayama, declaró prescrita la acción ejercitada y en igual fecha dictó sentencia desestimando la demanda enmendada. No empece haberse dictado la sentencia más de siete años antes, la copia de la notificación de la misma no fue archivada en autos hasta 1964. (²)

El 20 de abril de 1965, instado por moción de reconsideración de la demandante radicada en tiempo, el tribunal recurrido procedió a reconsiderar y a dejar sin efecto su resolución y sentencia del 13 de septiembre de 1957, por entender que así lo requería la decisión de *Ocasio* v. *Díaz*, 88 D.P.R. 676 (1963).

---

(¹) Cómo llega a la conclusión de que fue reconocida mediante partida bautismal no lo sabemos. La partida bautismal que consta en autos, como Exhibit *A*, firmada por el Párroco Luis L. Díaz, solamente dice: "IGLESIA CATÓLICA DE PATILLAS, P.R.—4 de Nobre. 1949.—PARTIDA DE BAUTISMO DE CARMEN LABOY.—Certifico que en el libro de bautismos No. 30 desta [*sic*] parroquia al folio 425 y número 375 hay una partida que transcrita al original dice:—'El día 8 del mes de agosto del año 1924 bauticé a CARMEN; que nació el día 12 de septiembre del año 1923; hija natural de Jacoba Laboy, natural de Patillas y vecina de Patillas.—Abuelos maternos: Ángel y Francisco Velázquez [*sic*].—Padrinos: Enrique Colón y Felícita Laboy.— firmado: Filiberto Pardo.—[firmado:] Luis L. Díaz.—párroco.'"

(²) Con motivo de haberse comenzado un nuevo pleito entre las mismas partes en el Tribunal Superior, Sala de San Juan, en el cual se interpuso la defensa de cosa juzgada, se descubrió que en el expediente del caso de autos no obraba copia de notificación de la sentencia de 1957. Los demandados alegaron que la misma había sido archivada en debida forma pero que se había perdido. El 24 de agosto de 1964 el tribunal de instancia declaró sin lugar una "Moción Sobre Sustitución de Documento Perdido," resolviendo que la notificación alegadamente perdida nunca había sido archivada. En dicha resolución ordenó que se preparara una nueva notificación, se cursara copia a las partes y se archivara en autos el original. Finalmente el 7 de diciembre de 1964 se archivaron en autos un original y una copia de la nueva notificación.

Los demandados han recurrido ante este Tribunal mediante *certiorari* por creer que el tribunal de instancia erró al resolver que la acción no está prescrita.

Como puede verse, no tenemos ante nos el problema que podemos llamar sustantivo de si la demandante es o no hija de Manuel Texidor Díaz. Tampoco tenemos que decidir si aquél o, en su defecto, las personas con derecho a su herencia, reconocieron a Carmen. El problema que este recurso plantea es uno previo a los dos antes mencionados, pues se trata de si la acción judicial que presentó la demandante está prescrita o no.

■ Los sucesos determinantes de los derechos que pueda o no tener la demandante ocurrieron mucho antes de comenzar a regir la Constitución del Estado Libre Asociado en 1952. Ella nació en 19 de septiembre de 1923. Manuel Texidor Díaz falleció en 17 de noviembre de 1930. La demandante advino a su mayoridad en 19 de septiembre de 1944. Por haber fallecido su presunto padre mientras la demandante era menor de edad, ella pudo presentar su acción antes de que transcurrieran los primeros cuatro años de su mayor edad, esto es hasta sus 25 años, a tenor con el Art. 126 del Código Civil, 31 L.P.R.A. sec. 505 [3] Ese plazo venció el 19 de septiembre de 1948. No fue hasta el 10 de enero de 1951 que la demandante presentó la demanda. Es inescapable la conclusión de que cuando intentó ejercer la acción ésta ya había caducado. [4]

---

[3] En su parte aquí pertinente dispone dicho Art. 126: "Las acciones para el reonocimiento de hijos naturales, sólo podrán ejercitarse en vida de los presuntos padres, o un año después de su muerte, salvo en los casos siguientes: (1) Si el padre o la madre hubiesen fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad."

[4] Dicho plazo es uno de caducidad, *Ortiz Rivera* v. *Sucn. González Martínez*, 93 D.P.R. 562 (1966); Velázquez, Guaroa, "*La Extinción de la Acción de Filiación en el Derecho Puertorriqueño*," 17 Rev. C. Abo. P.R., pág. 237 (1957).

Es correcta, pues, la sentencia del Tribunal Superior dictada en 13 de septiembre de 1957 y es errónea la que dictó en reconsideración en 20 de abril de 1965.

█ El tribunal de instancia, en su sentencia de 1965, y la demandante en su memorando ante nos, incurren en unos errores comunes. Estiman que el término de caducidad del Art. 126 del Código Civil es incompatible con la Ley Núm. 229 de 12 de mayo de 1942. (5) No hay tal cosa. Por el contrario surge claro, como veremos, que al legislador redactar la Ley Núm. 229 estuvo consciente de las disposiciones del Código Civil sobre reconocimiento de hijos naturales. En la propia Ley Núm. 229, según enmendada, se remite a dichas disposiciones del Código Civil. Veamos.

En sus dos secciones pertinentes la Ley Núm. 229 lee como sigue:

"Sección 1.—Serán hijos naturales todos los hijos nacidos fuera de matrimonio con posterioridad a la fecha de vigencia de esta Ley, independientemente de que sus padres hubieren podido o no contraer matrimonio al tiempo de la concepción de dichos hijos. Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí." *Leyes* de 1942, pág. 1297.

"Sección 2.—Los hijos nacidos fuera de matrimonio con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior, podrán ser reconocidos por acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, a todos los efectos legales. Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí.

En caso de que los hijos a que se refiere esta sección no fueren reconocidos por la acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, dichos hijos se considerarán hijos naturales al solo efecto de llevar el apellido de sus padres. *La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija .el Código*

---

(5) Enmendada su Sec. 2 por la Ley Núm. 243 de 12 mayo 1945. 31 L.P.R.A. secs. 501–503.

*Civil de Puerto Rico para el reconocimiento de hijos natura-
les;* Entendiéndose, sin embargo, que tal reconocimiento sólo
tendrá el alcance que aquí se expresa." (Subrayado nuestro.)
*Leyes* de 1945, pág. 815; 31 L.P.R.A. secs. 501–503.

En primer lugar, lo que la Ley Núm. 229 hace, con un
loable espíritu humanitario y justiciero, es establecer que
todos los hijos nacidos fuera de matrimonio (con posteriori-
dad a la fecha de vigencia de dicha ley) serán tenidos por
hijos naturales, independientemente de que al momento de su
concepción hubiesen podido o no contraer matrimonio sus pa-
dres. En otras palabras, la Ley Núm. 229 hace permisible lo
que no se permitía antes. Esto es, que los hijos adulterinos y
los incestuosos que antes no podían considerarse para fines
legales como hijos naturales, Art. 125 del Código Civil, 31
L.P.R.A. sec. 504, en virtud de dicha Ley Núm. 229 se decla-
ran hijos naturales, con todos los derechos que eso implicaba
bajo aquella legislación anterior a la Constitución y a la Ley
Núm. 17 de 20 de agosto de 1952, 31 L.P.R.A. sec. 441.

■ Dispone también la Ley Núm. 229 que dichos hijos
quedarán legitimados por el subsiguiente matrimonio de sus
padres entre sí. Además, dicha ley permite que esos hijos que
no tenían la condición de hijos naturales según la legislación
anterior, esto es, los adulterinos y los incestuosos, puedan ser
reconocidos voluntariamente por sus padres, y en defecto de
éstos, por las personas con derecho a su herencia. De manera
que lo que antes no podía hacerse, esto es, reconocer a los hijos
adulterinos o incestuosos, ahora puede hacerse, desde el año
1942, en virtud de dicha Ley Núm. 229.

Para los casos en que los hijos a que se refiere dicha Ley
Núm. 229 no fuesen reconocidos *voluntariamente* por sus
padres, y en defecto de éstos, por las personas con derecho a
su herencia, la Sec. 2 de la ley, según enmendada en 1945,
dispuso que dicho hijos (los no reconocidos voluntariamente)

tendrían derecho a una acción para llevar el apellido de sus padres.

Como se ve, la Ley Núm. 229 contempla dos situaciones distintas: Una, cuando los padres, o en su defecto las personas con derecho a la herencia, reconocen voluntariamente a esos hijos extra-matrimoniales. La otra situación es cuando dichas personas no los reconocen y es para esta segunda alternativa que dicha ley les provee el derecho de llevar una acción para obtener el apellido de sus padres. Señalamos antes que al redactar esta Ley Núm. 229 el legislador estaba consciente del procedimiento que para esta materia contiene el Código Civil y esto lo demuestra en el segundo párrafo de la Sec. 2 de la Ley Núm. 229, según enmendada, que es el que se refiere a la situación cuando los hijos a que esa ley se refiere no son reconocidos voluntariamente por sus padres o por las personas con derecho a la herencia, y el que les provee la acción para obtener el apellido. Allí el legislador dispuso que "La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil de Puerto Rico para el reconocimiento de hijos naturales."

■ De manera que no cabe confundir el derecho que la Ley Núm. 229 le da a los padres y a otras personas para reconocer voluntariamente a los hijos ilegítimos que no podían llamarse naturales bajo la legislación anterior con la acción judicial de filiación que dichos hijos pueden incoar. Los padres, o en su defecto las personas con derecho a la herencia, pueden reconocer voluntariamente en cualquier momento. Pero para los hijos obtener el reconocimiento forzoso a través de los tribunales, éstos tienen que observar los procedimientos y términos prescriptivos que contiene nuestra legislación positiva, y en este caso en particular, el Art. 126 del Código Civil. No hay, pues, incompatibilidad alguna entre la Ley Núm. 229 y el Art. 126 del Código Civil.

■  Es claro que lo que tenemos ante nosotros no es un acto de reconocimiento voluntario sino de un litigio, esto es, una acción judicial, presentada por la demandante para obtener un reconocimiento forzoso a través de una sentencia judicial. Para los reconocimientos mediante acción judicial es que el Art. 126 del Código Civil estableció el término de caducidad que aquí examinamos.

■  En segundo lugar, el derecho de la demandante no surge de la Ley Núm. 229 de 1942.  Como hemos indicado, esta ley se hizo para beneficiar a los hijos ilegítimos que no podían considerarse hijos naturales bajo la legislación anterior. Ése no es el caso de la demandante, pues si asumimos que la demandante es hija de Manuel Texidor Díaz, la demandante hubiese tenido la condición de hija natural bajo la legislación anterior pues al momento de la concepción sus padres eran solteros y podían contraer matrimonio entre sí. La Ley Núm. 229 ni mejoró ni empeoró la condición de la demandante. Aun en ausencia de la Ley Núm. 229 su alegado padre pudo haberla reconocido en cualquier momento y desde que ella nació en el año 1923 (primero mediante representante legal y luego personalmente) y hasta que cumplió 25 años de edad ella pudo haber ejercido su derecho a reclamar judicialmente su reconocimiento a tenor con lo dispuesto en el Art. 126 del Código Civil.

Es muy significativo, y aquí puede decirse que radica el error en que incurrió el Juez sentenciador en su sentencia del año 1965, que al citar el primer párrafo de la Sec. 2 de la Ley Núm. 229 en dicha sentencia, omitió el siguiente lenguaje: "con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior." Esas cláusulas son críticas para la solución de este caso (y para la correcta aplicación de esa Ley) pues claramente excluyen a la demandante del ámbito de la Ley Núm. 229 porque, como ya hemos indicado, bajo la legislación

anterior la demandante (de ser cierta la relación biológica) no era ni hija adulterina ni hija incestuosa sino que hubiese sido hija natural.

■ Otro error de bulto del juez sentenciador es que expresa que el término prescriptivo para ejercitar la acción "parecería" ser de 15 años y se ampara en *Torres* v. *Sucn. Cautiño*, 70 D.P.R. 646 (1949), en donde se dijo que cuando no se dispone por ley un término prescriptivo para acciones de filiación, se aplicará el de 15 años contenido en el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. Dicho artículo dispone que "La acción hipotecaria prescribe a los 20 años, y las personales que no tengan señalado término especial de prescripción, a los 15." Cuando el juez sentenciador citó ese caso el mismo tenía ya 13 años de haber sido revocado expresamente en ese extremo en *Fuentes* v. *Tribl. de Distrito*, 73 D.P.R. 959, 974–975 (1952). Así tenía que serlo, pues como se reconoce en *Fuentes* v. *Tribl. de Distrito,* supra, para las acciones para el reconocimiento de hijos naturales hay un plazo expresamente señalado en el Art. 126 del Código Civil, el cual en su parte pertinente hemos anteriormente transcrito en el escolio Núm. 3 de esta opinión.

■ Por último, erró el juez sentenciador en su sentencia de 1965 al estimar que era de aplicación el caso de *Ocasio* v. *Díaz,* supra, porque allí dijimos que su sentencia es de aplicación a todos los casos que estaban *pendientes* en el año 1952. Esto es correcto, pero cuando allí dijimos "pendientes" naturalmente quisimos decir casos pendientes y vivos; en forma alguna quisimos incluir a las acciones que estaban ya prescritas o que habían caducado como la del caso de autos. No poca confusión se crearía y no poca multiplicación de pleitos ocurriría si fuese lo contrario. Difícilmente podríamos nosotros en buen Derecho mediante la sentencia de *Ocasio* revivir acciones ya prescritas. Dicha sentencia se aplica a acciones vi-

vas y en trámite pero en forma alguna a acciones ya muertas mediante la prescripción o la caducidad. (⁶)

*Se dejará sin efecto la resolución del Tribunal Superior, Sala de Guayama, dictada en este caso en 20 de abril de 1965.*

---

(⁶) Algunos de los autores que en Puerto Rico se han ocupado recientemente de este tema de la filiación y los hijos extramatrimoniales, y sus trabajos, son: Calderón, Álvaro R., Jr., *La Filiación en Puerto Rico* (1963); Mascareñas, C.E., *"Algunas Consideraciones Sobre la Filiación de los Hijos Extramatrimoniales y los Derechos de los Mismos,"* 10 Revista de Derecho Puertorriqueño 173 (1963); el mismo autor, *"La Filiación en el Derecho Puertorriqueño,"* 4 Revista de Derecho Puertorriqueño 7 (1962); Velázquez, Guaroa, *"La Extinción de la Acción de Filiación en el Derecho Puertorriqueño,"* 17 Rev. C. Abog. P.R. 237 (1957); González Blanes, Héctor, *"Paternidad v. Filiación,"* 17 Rev. C. Abog. P.R. 151 (1957); Calderón, Álvaro R., Jr., *"La Igualdad Jurídico Filial en Puerto Rico,"* 16 Rev. C. Abog. P.R. 37 (1956); Belén Trujillo, Edwin W., *De la Paternidad y la Filiación Conforme al Derecho Puertorriqueño,* ed. revisada, Colegio de Derecho U.P.R. (1955); Muñoz Morales, Luis, *"De los Hijos Legítimos, Ilegítimos y Legitimados,"* 10 Rev. Jur. U.P.R. 229 (1941); Muñoz Morales, Luis, *"Derecho de los Hijos Ilegítimos en Puerto Rico,"* 6 Rev. Jur. U.P.R. 324 (1936–37).