La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
La controversia en este caso se circunscribe a cuando comienza a transcurrir el término de caducidad de la acción para impugnar un reconocimiento voluntario de paternidad, debido a su inexactitud. Resolvemos que dicho plazo transcurre desde el acto del reconocimiento.
I
No están en controversia los hechos que dan lugar al recurso de autos. Johnny González Rosado (peticionario) y Yahaira Echevarría Muñiz (recurrida) sostuvieron relaciones sexuales mientras compartían una relación sentimental. En el 2001 la recurrida quedó embarazada e *560 informó al peticionario que el hijo sería suyo. En vista de ello, la pareja estableció su hogar en la casa del peticionario. El 17 de abril de 2002, la peticionaria dio a luz, y siete días después, el 24 de abril de 2002, el peticionario inscribió al recién nacido como hijo suyo en el Registro Demográfico (Registro).
Las partes se realizaron una prueba de paternidad el 3 de noviembre y recibieron su resultado el 3 de diciembre de 2002. Esta sugirió que el señor González Rosado no podía ser progenitor del menor a quien había inscrito. Consecuentemente, el peticionario impugnó su acto de reconocimiento voluntario mediante una demanda presentada el 19 de febrero de 2003, casi diez meses a partir de la inscripción del menor en el Registro.
El Tribunal de Primera Instancia desestimó la referida demanda a raíz de una moción de desestimación presentada por la parte recurrida y con el beneficio de una vista celebrada para discutir dicha solicitud. Resolvió que la acción sobre impugnación de reconocimiento voluntario había caducado al haber transcurrido tres meses, contados desde el acto de reconocimiento, sin presentarse. Concluyó, además, que no se había demostrado la presencia de error, violencia o intimidación en el acto de reconocimiento.
El peticionario acudió sin éxito al Tribunal de Apelaciones. Allí imputó dos errores al foro de instancia: (1) resolver que sólo con una demanda se evita la caducidad de una acción para impugnar un reconocimiento voluntario, y (2) determinar que no se probó la presencia de error en el acto de reconocimiento. Sin embargo, el foro a quo confirmó la sentencia apelada. Concluyó que una acción impugnatoria del reconocimiento voluntario caduca cuando no se presenta en los tribunales durante los tres meses a partir de la inscripción.(1)
Inconforme, el peticionario acudió oportunamente ante *561 nosotros. Acusa la comisión de errores análogos a los que llevó ante el Tribunal de Apelaciones, esto es, resolver que la acción de impugnación debe formularse inicialmente ante un foro judicial para ser válida y que el reconocimiento impugnado no ocurrió “bajo error o intimidación”. Petición de certiorari, pág. 3. Sostiene, en particular, que a pesar de haber impugnado extrajudicialmente su paternidad ante la recurrida, dentro de los tres meses siguientes a la inscripción, no pudo tener certeza sobre el error dentro de ese término. Ello debido a que las pruebas de paternidad precisan de un sujeto con al menos tres meses de edad, según le informaron; que el menor estuvo enfermo una vez cumplió dicha edad, y que el resultado de la prueba tardó un mes en llegar.
II
 A. La filiación es aquel estado civil de la persona determinado por “la situación que, dentro de una familia, le asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente al efecto”. Castro v. Negrón, 159 D.P.R. 568, 579-580 (2003). Se trata de un vínculo jurídico que establece una amplia gama de derechos y obligaciones, cuya trascendencia es innecesario recalcar.
La filiación es una relación fundamentalmente jurídica que responde a ciertos imperativos de la política pública. El primero es recoger y reglamentar los vínculos biológicos entre las personas. Por eso hemos indicado que dichos vínculos son los criterios básicos de la filiación; esto es, que sus normas han sido diseñadas para lograr una correspondencia entre los vínculos biológicos y los jurídicos.(2) A modo de ejemplo, la presunción de paterni *562 dad aplicable al cónyuge de una madre refleja, entre otras cosas, el supuesto empírico de que los hijos de una mujer casada suelen ser hijos de su marido. Más allá de esta función epistemológica, hemos reconocido que se debe procurar, en lo posible, una coincidencia entre la realidad biológica y la jurídica. Castro v. Negrón, ante.
Ahora bien, no es la filiación un desenfrenado culto a la biología, sino que responde, también, a ciertos intereses de los particulares y de la comunidad. En especial, existe un gran interés en la estabilidad de aquellos derechos y obligaciones derivados de la filiación. Ello procura evitar, entre otras cosas, que la cuestión filiatoria permanezca abierta indefinidamente, en perjuicio de quien aparece como hija y podría ser víctima de los conflictos conyugales entre los supuestos padres. A tal imperativo de estabilidad jurídica responden las normas que establecen presunciones, imponen términos perentorios de caducidad para la impugnación de las constancias filiatorias del Registro Demográfico, e insisten en estrictos requisitos de legitimación activa. Así, la relación biológica no es una condición necesaria ni suficiente de la relación filial.(3)
Lo expuesto implica que las normas filiatorias reflejan una determinación de política pública sobre el balance apropiado de los intereses reseñados. Hacemos hincapié en ello para velar contra la tentación de suponer anticuadas o formalistas aquellas normas que no responden al criterio biológico. No se trata aquí de rechazar la *563 verdad en pro de la mentira, sino de entender que la realidad biológica es sólo parte de la verdad, y no siempre la más justa.
B. Existen dos vías principales hacia la filiación paternal: la matrimonial y la extramatrimonial. De una parte, se presume hijo del cónyuge varón a quien nació bajo las circunstancias siguientes: (1) dentro de los 180 días de haberse celebrado el matrimonio, si el marido no impugna su paternidad; (2) después del referido plazo y durante el matrimonio; (3) antes de los 300 días a partir de la disolución del matrimonio. Arts. 113-114 del Código Civil, 31 L.P.R.A. sees. 461-462; Calo Morales v. Cartagena Calo, 129 D.P.R. 102 (1991).(4)
La filiación extramatrimonial, a su vez, queda establecida mediante el reconocimiento forzoso o voluntario. Castro v. Negrón, ante. En el segundo escenario, se entiende por reconocimiento “aquella declaración hecha por ambos padres (o por uno de ellos aisladamente), por cuya virtud acreditan que una persona es hija suya, siempre que ello se haga en las condiciones y mediante las formas prescritas por las leyes”. F. Puig Peña, Compendio de Derecho Civil Español, Madrid, Ed. Pirámide, Vol. V, pág. 394. Véase Almodóvar v. Méndez Román, 125 D.P.R. 218, 249 esc. 15 (1990). Véase, además, R. Herrera Campos, La filiación no matrimonial tras la reforma del Código Civil de 13 de mayo de 1981, 1983 Rev. Der. Priv. 3, 12 (1983). La doctrina española describe los caracteres del reconocimiento de la manera siguiente: “Resulta incuestionable el principio legal y jurisprudencial que atribuye al reconocimiento de paternidad los caracteres de acto unilateral, personalísimo, formal y sobretodo irrevocable; *564 ... perdiendo su fuerza legal únicamente si se acredita que se ha incurrido en un vicio de la voluntad .” (Enfasis nuestro.) S.TS 27 de octubre de 1993 (Ar. Núm. 7664). Véanse: Herrera Campos, op. cit, pág. 13; Puig Peña, op. cit, pág. 401 (“[El reconocimiento de un hijo, por ser] la confesión de un hecho, lógicamente es, como toda confesión, irrevocable y una vez hecha no puede arbitrariamente retirarse”). Véase, además, J. Rams Albesa y R. Moreno Flórez, Comentarios al Código Civil, Barcelona, Ed. Bosch, 2000, T. II, Vol. 2, págs. 1227-1232. El efecto del reconocimiento voluntario es una presunción de paternidad con efectos análogos a la filiación matrimonial. Castro v. Negrón, ante.
III
Debemos repasar las acciones dirigidas a impugnar la filiación, tanto matrimonial como extra-matrimonial. Un supuesto progenitor, entre otros, tiene derecho a impugnar la presunción de filiación matrimonial. Dicha acción tiene dos modalidades. Primero, el marido puede cuestionar su paternidad y demostrar que el hijo nació dentro de los ciento ochenta días de celebrarse el matrimonio o después de los trescientos días a partir de su disolución. Se trata aquí de un ataque dirigido a la presunción per se, tendiente a eliminarla, y no al nexo biológico. Por otro lado, el marido o ex marido puede establecer que no existe tal nexo, arremetiendo directamente contra la paternidad. Ambas modalidades las reconocimos en Almodóvar v, Méndez Román, ante, pág. 242:
A su vez esta impugnación de la paternidad del marido ha sido clasificada y distinguida por la doctrina en impugnación o desconocimiento riguroso de la paternidad y la denominada impugnación, o desconocimiento simple de ella. Bástenos con decir que en la primera corresponde al marido atacar la presunción legal produciendo prueba que descarte el nexo biológico. En la segunda, ha de negar la filiación probando que *565 el hijo de su mujer nació en los primeros ciento ochenta días del matrimonio, o después de los trescientos días de la disolución del matrimonio. (Citas omitidas.)
En cambio, nuestra jurisprudencia ha tenido claro que la acción impugnatoria correspondiente a la filiación extramatrimonial es una figura encaminada a desvirtuar, no la paternidad per se, sino el acto de reconocimiento voluntario. En Almodóvar v. Méndez Román, ante, sostuvimos que, aun cuando el efecto real de la impugnación es eliminar el estado filiatorio establecido, es innecesario impugnar directamente la condición de hijo, pues lo que se pretende anular es el acto mismo del reconocimiento. Incluso, citamos el criterio de Bossert en cuanto a que “[n]o hay acción de impugnación de la paternidad extramatrimonial, aunque pueda existir la acción de impugnación del reconocimiento”. Almodóvar, ante, págs. 241-242. Igual criterio acogimos en Mayol v. Torres, 164 D.P.R. 517, 540 (2005), al distinguir la “impugnación” de la “revocación”:
La impugnación, sin embargo, es un supuesto distinto, que se refiere no a un acto de voluntad contradictorio, sino a la acción de cuestionar en los tribunales la validez y efectividad jurídica del acto de voluntad original, por fundamentos jurídicos aceptados por el ordenamiento. Así, el principio de irrevocabilidad prohíbe al reconocedor invalidar su propia declaración anterior, o sea, arrepentirse, mientras la acción para impugnar un reconocimiento voluntario tiene como objeto que el estado deje sin efecto una filiación extramatrimonial legalmente establecida. (Énfasis suplido.)
En fin, hemos caracterizado las acciones impugnatorias como aquellas encaminadas a desvirtuar un reconocimiento voluntario para dejar sin efecto determinado estado filiatorio. Véanse, también: M.D. Díaz-Ambrona Bardají y F. Hernández Gil, Lecciones de Derecho de Familia, Madrid, Ed. Centro de Estudios Ramón Areces, 1999, pág. 412 (“Hay que resaltar que lo que se impugna es el reconocimiento, independientemente de que el reconocedor sea en realidad padre o madre biológicos”).
*566 En el contexto del reconocimiento voluntario, un vicio por error se configura mediante cierta disparidad entre la realidad y el entendimiento de quien reconoce. Nos dice el Tribunal Supremo español que error es “el falso conocimiento de la realidad, capaz de dirigir la voluntad a la emisión de una declaración no efectivamente querida”. S TS 21 de mayo de 1963. Así, en Díaz-Ambrona Bardají y Hernández Gil, op. cit., pág. 412, se identifica dos modalidades de error, a saber: “a) por ignorancia, por no tener conocimiento exacto de la realidad, y b) por creer como ciertas determinadas circunstancias que no lo son.”
Las definiciones citadas sugieren que el reconocimiento de quien se tiene por hija, y no lo es, podría constituir un error viciante. Sin embargo, antes de Mayol v. Torres, ante, nuestra jurisprudencia contenía expresiones tendientes a rechazar esa conclusión.(5) De ahí que resolviéramos en Oaks Reyes v. Ortiz Aponte, 135 D.P.R. 898 (1994), por vía de sentencia, que el reconocedor demandante debía probar un vicio del consentimiento, antes de ordenarse las pruebas de paternidad. Ello ante una escueta demanda, cuyas alegaciones se referían vagamente a las dudas del reconocedor sobre su paternidad.
Es en tal contexto normativo y procesal, que surge Mayol v. Torres, ante, donde establecimos una acción impugnatoria del reconocimiento voluntario debido a su inexactitud. El efecto de esta norma es permitir que un presunto progenitor impugne su reconocimiento voluntario *567 mediante la ausencia del vínculo biológico, sin necesidad de probar otro vicio del consentimiento (e.g., su esterilidad al ocurrir la concepción). Amén de ello, señalamos que los tribunales debían ordenar las pruebas de paternidad correspondientes, siempre que el solicitante alegara con especificidad los hechos que provocan sus dudas. Explicamos que dichas normas establecen un mejor balance de los intereses en conflicto, haciendo énfasis en el breve plazo de caducidad que aplica a las acciones impugnatorias.
Ahora bien, la acción independiente de impugnación por inexactitud no deja de estar vinculada íntimamente con el concepto de error. Debemos recordar que todas las acciones impugnatorias se dirigen a desvirtuar el acto de reconocimiento. Y como expresamos en Mayol v. Torres, ante, dichas acciones se distinguen de la revocación, precisamente, porque no pretenden hacer viable un “acto de voluntad contradictorio”. Mayol, ante.
IV
A. La figura de la caducidad participa de una construcción estrictamente jurisprudencial al margen de textos legales, tanto bajo nuestro ordenamiento como el español. Su razón de ser es, principalmente, evitar la persistencia de incertidumbre de una relación o situación jurídica. En tal sentido, la caducidad “atiende a fines sociales relevantes, lo que le da cierto carácter de orden público”. F. Rivero Hernández, ¿Apreciación de oficio de la caducidad en todo caso?, 2001 Rev. Der. Priv. 465, 480 (2001).
El objeto de la caducidad —es decir, lo que caduca— son los derechos potestativos o de modificación jurídica. Aquí la jurisprudencia y normativa española nos presenta una madeja de posibilidades. La figura en cuestión se aplica a una variedad de situaciones, relaciones, acciones y derechos, entre los cuales destacan los retractos *568 de colindantes, comuneros y coherederos, así como el derecho de tanteo. Aplica también a acciones rescisorias, tanto las de contratos en general, como las derivadas de la lesión y de la partición hereditaria. Rivero Hernández, ante, págs. 480-481. Finalmente, aplica a las llamadas acciones de estado, que comprenden desde la filiación hasta las de nulidad de matrimonio.
La caducidad filiatoria no admite interrupción. Así ocurre, incluso, en el ordenamiento español, el cual ha desteñido la figura. Un examen de los dictámenes de ese tenor evidencian que, aun cuando se han “admitido excepciones y flexibilidad ... no hay ... ningún caso que afecte a relaciones o acciones sobre estado civil de las personas —respecto de las que la caducidad es típica e indiscutida desde la primera hora— en que haya ocurrido lo mismo”. (Énfasis nuestro.) Rivero Hernández, ante, págs. 485-486. La jurisprudencia que así dispone “ha destacado que no se puede dejar el control de estos procesos ni la prueba de la real filiación al juego del principio dispositivo propio del proceso civil en nuestro sistema jurídico”, íd. E.g., T.C. 120/1984, 10 de diciembre; S.TS de 21 de mayo de 1988 (Ar. Núm. 6543); S.TS de 21 de septiembre de 1999 (Ar. Núm. 6949). Véase, además, R. Bercovitz, Comentario Sentencia T.S. 30 de mayo de 1984, C.C.J.C., 1984, pág. 1824, citado en Rivero Hernández, ante, pág. 487 (“La caducidad responde al deseo del legislador de que una situación de incertidumbre no se pueda prolongar, por lo que es apreciada de oficio. Ello se debe frecuentemente a una defensa del orden público, como ocurre en las acciones relacionadas con el estado civil de las personas y materias afines” (énfasis nuestro)). Véanse, también: S. de 30 de abril de 1940 (Ar. Núm. 304); S. de 25 junio de 1962 (Ar. Núm. 3051); S. de 26 de septiembre de 1997 (Ar. Núm. 6613).
B. El término para instar una acción sobre impugnación del reconocimiento voluntario es de caducidad. Véanse: Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. *569 562 (1966); Texidor Díaz v. Tribunal Superior, 94 D.P.R. 666 (1967). Véase, además, G. Velásquez, La extinción de la acción de filiación en el Derecho puertorriqueño, 17 Rev. C. Abo. P.R. 237 (1957). Del mismo modo se entiende en la doctrina española. J.A. Alvarez Caperochipi, Curso de Derecho de Familia, Madrid, Ed. Civitas, 1988, Vol. II, pág. 139. En Almodóvar v. Méndez Román, ante, establecimos su dies a quo. Cuando se trata de la violencia o la intimidación, el plazo de caducidad transcurre desde el momento cuando cesan dichas circunstancias. Almodóvar, ante, pág. 261. Cuando, por otro lado, la impugnación del reconocimiento obedezca a un error, “el término de caducidad de tres meses necesariamente debe contarse desde la fecha en que se llevó a cabo el reconocimiento”. íd.
Varias consideraciones nos convencen que la acción de impugnación por inexactitud debe estar sujeta a un plazo idéntico. Hemos visto, en primer lugar, que la filiación matrimonial puede soslayarse mediante dos acciones, una dirigida a impugnar la paternidad y otra a impugnar la presunción. Empero, sea cual fuera la modalidad instada, nuestra jurisprudencia establece claramente que existe un solo término de caducidad para impugnar la presunción de filiación matrimonial correspondiente a una hija nacida dentro del matrimonio. Al respecto, vale la pena citar de nuestra opinión en Almodóvar v. Méndez Román, ante, págs. 252-253:
... Como sabemos, por virtud de las disposiciones del citado Art. 117 del Código Civil, el marido tiene el término de tres meses desde la inscripción del nacimiento, si se hallaba en Puerto Rico, y el término de seis meses desde que tuvo conocimiento del nacimiento, si se hallaba fuera de Puerto Rico, para radicar la acción de impugnación de legitimidad. Ello tiene la consecuencia de que el niño que nace de mujer casada consolida su estado filiatorio respecto de su padre al transcurrir dichos períodos de tres o seis meses, pues pasado “el mismo” su status familiae resulta ser inatacable por el padre por razón de haber caducado la acción que a esos efectos la ley le concede a éste. (Énfasis suprimido y en el original.)
*570 Obsérvese cómo, en ambos casos, el término de caducidad y su dies a quo son idénticos.
Por otro lado, hemos visto que la decisión en Mayol v. Torres, ante, no pretendió descartar toda afinidad entre las acciones de impugnación por error e inexactitud, sino establecer un balance más adecuado de los intereses en conflicto. Tratándose, pues, de dos acciones muy parecidas, cabe aplicarles el mismo plazo de caducidad. Máxime, cuando su brevedad fue una de las consideraciones que incidió poderosamente en el balance de intereses efectuado.
Finalmente, debemos puntualizar la importancia que supone la certeza en la fijación del término de caducidad. En tal sentido se ha indicado:
El plazo de caducidad para impugnar los estados civiles claudicantes debe computarse siempre desde la misma fecha. De lo contrario se prolonga durante márgenes temporales inciertos la falta de firmeza del estado civil impugnable, lo que no es aconsejable, pues razones de seguridad jurídica exigen plazos de impugnación cortos y bien determinados. De poco sirve que el plazo de caducidad sea breve si no se sabe cuál va a ser el día que marca el comienzo del cómputo. (Enfasis nuestro.) M. de la Cámara Álvarez, Reflexiones sobre la filiación ilegítima en Derecho español, Madrid, Ed. Tecnos, 1975, pág. 105.
Nuestra decisión no sostiene la tesis de que la paternidad jurídica es preferible a la biológica. Más bien, se quiere evitar que la filiación se torne en “un semillero de impugnaciones, muchas de ellas maliciosas ... [frente al] mal que pueda suponer que haya alguien que aparezca como hijo del que posiblemente no lo generó”. M. Albaladejo, El reconocimiento de la filiación natural, Barcelona, Ed. Bosch, 1954, pág. 8.
Conviene añadir que la posibilidad de investigar con métodos científicos la paternidad biológica no es incompatible ni detracta de la importancia que reviste para el or *571 denamiento que los plazos que inciden sobre las relaciones de familia sean de caducidad.(6) En este aspecto, resulta relevante la S.TS 14 de marzo de 1994 (Ar. 1777,) que dice:
... Es cierto que la Ley permite la investigación biológica de la filiación y paternidad, pero también lo es que no ha introducido en nuestro sistema una investigación indiscriminada, perturbadora del orden interno familiar y contraria al estado civil y posesión de hecho del mismo que gozan las personas. La Ley apoya la verdad material, pero a favor de los hijos y de la familia, no como elemento distorsionador del orden interno, por ello limita el círculo de los legitimados y establece plazos de caducidad de las acciones. (Enfasis nuestro.)
Es decir, que independientemente de la importancia que reviste la investigación biológica —la cual en España goza de rango constitucional— no cabe soslayar los términos de caducidad para instar la correspondiente acción de impugnación de reconocimiento.
La posición que hoy acogemos establece el balance más justiciero respecto a los variados intereses que matizan esta controversia. Es decir, entre la finalidad que persigue la investigación sobre la paternidad, que es la adecuación de la verdad jurídica-formal a la verdad biológica, frente a los valores trascendentales de la protección de la familia en general y las hijas e hijos en particular, así como el de la seguridad jurídica en el estado civil de las personas.
*572 V
Dada la normativa expuesta, el recurso nos presenta una controversia relativamente sencilla. El peticionario impugnó su reconocimiento voluntario mediante una demanda presentada casi diez meses a partir de éste. El plazo de caducidad aplicable era de tres meses y comenzó a transcurrir desde el acto de reconocimiento. Dicho término era inmune a la interrupción extrajudicial. Por ende, debemos concluir que la acción impugnatoria ha caducado.(7)
VI
Por todo lo anterior, se expide el auto solicitado y se confirma la determinación del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad y disidente. La Jueza Asociada Señora Fiol Matta emitió una opinión disidente.

 El foro apelativo no se expresó con respecto al segundo error señalado, por entender, inter alia, que era innecesario.

 Véanse, entre otros: I. Cortero Cutrillas, La impugnación de la paternidad matrimonial, Barcelona, Pubs. Universitat Jaume I, 2001, Cap. 1; M. Pena Bernardo de Quirós, Derecho de Familia, Madrid, Universidad Complutense, 1989, pág. 439 y *562 ss; L. Diez-Picazo y A. Guitón, Sistema de Derecho Civil, 5ta ed., Madrid, Ed. Tecnos, 1989, Vol. IV, pág. 247.

 No siempre la filiación jurídica ha de coincidir con la biológica. Sobre este particular se ha señalado: “La primera [la jurídica] es mucho más rica y compleja que el mero dato o lazo biológico en cuanto categoría jurídica y social que es y en la que se integran componentes metajurídicos, elementos varios: volitivos, afectivos, sociales, formales. Destacan en ella, además, unos importantes roles que la sociedad y el Derecho confieren a los protagonistas de dicha relación, donde lo funcional y lo social tienen a veces mayor trascendencia que el mero elemento natural o biológico.” J. Rams Albesa y R. Moreno Flórez, Comentarios al Código Civil, Barcelona, Ed. Bosch, 2000, T. II, Vol. 2, pág. 1077.

 Añadimos en Castro v. Negrón, 159 D.P.R. 568 (2005), que “[1] os Arts. 119 a 122 del Código Civil permiten que el subsiguiente matrimonio de los progenitores convierta la filiación que inicialmente fue extramatrimonial en una filiación matrimonial para todos los efectos y respecto a todas las personas”. Véase 31 L.P.R.A. sees. 481-484.

 Las expresiones siguientes de Almodóvar v. Méndez Román, 125 D.P.R. 218, 261-262 (1990), son ilustrativas:
“En cuanto a este punto específico, conviene recordar lo expresado a esos efectos en el citado caso de Alcaide v. Morales, ante, y, en adición, unas palabras del Tribunal Supremo de España a los efectos de que es preciso que el error alegado ‘se compruebe y derive de hechos transcendentales que afecten directa y notoriamente [a] la creencia equivocada en que pudo estar el padre de que la madre sólo de él pudo concebir, sin que sea lícito de otro modo la suposición del error, pues equivaldría [a] autorizar un arrepentimiento y cambio de voluntad, que es en absoluto incompatible con las condiciones de permanencia de todo estado civil, permanencia que afecta al interés social y consiguientemente al orden público ...’. S. de 25 de junio de 1909, Núm. 93, 115 Jurisprudencia Civil 499.”

 Adviértase que el Art. 39 de la Constitución de España de 1978 le confirió rango constitucional al derecho a la investigación de la paternidad. El artículo dis-pone lo siguiente: “La Ley posibilitará la investigación de la paternidad.” De esta forma, el texto de la Constitución dio por terminado el sistema legal prevaleciente hasta entonces en el Código Civil de prohibir la investigación de la paternidad. El texto constitucional declaró, además, la igualdad de todos los hijos. En cumplimiento con este mandato constitucional se dictó la Ley 11/1981, de 13 de mayo, que modificó el Código Civil en materia de filiación, patria potestad y régimen económico del matrimonio. “La redacción actual del artículo 127 del Código civil es fruto de esta reforma, declarando la investigación de la maternidad y de la paternidad, admitiendo para ello toda clase de pruebas, incluso las biológicas.” M.D. Díaz-Ambrona Bardají y F. Francisco Gil, Lecciones de Derecho de Familia, Madrid, Ed. C. Est. Ramón Areces, 1999, pág. 400.

 Cabe recordar que ello no priva al menor de su posible causa de acción filiatoria vis-á-vis un tercero —el alegado padre biológico, quien no es parte en este litigio— acorde con lo que resolvimos en Sánchez Encarnación v. Sánchez Brunet, 154 D.P.R. 645(2001).