RESOLUCIÓN
Expida la Secretaria un Mandamiento de Certiorari dirigido al Tribunal de Apelaciones, Región Judicial de Ma-yagüez-Aguadilla, Panel X, para que a la brevedad posible remita a la Secretaria de este Tribunal los autos originales o una copia certificada en el Caso Núm. KLAN200800175, Antonio Vázquez Vélez v. Carelyn Caro Moreno por sí y en Representación del menor [A.Y.V.C.] y Daniel Valentín Rodríguez, a que se refiere la petición presentada en este caso.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodrí-guez emitió un voto disidente, al cual se unió el Juez Pre-sidente Señor Hernández Denton.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del TribunalSupremo

Voto particular disidente emitido por la Juez Asociada Se-ñora Rodríguez Rodríguez, al que se une el Juez Presi-dente Señor Hernández Denton.
[T]he Court [ought] not reenforce needlessly the instabilities of our day by giving fair ground for the belief that Law is the expression of chance— for instance, of unexpected changes in the Court’s composition and the contingencies in the choice of successors. United States v. Rabinowitz, 339 U.S. 56, 86 (1950), opinión disidente del Juez Frankfurter.
*987 El Tribunal hoy, con su proceder, allana el camino para revocar, o gravemente emascular, varias decisiones de este Tribunal. La vigencia continuada peligra para: Álvarezto-rre Muñiz v. Sorani Jiménez, 175 D.P.R. 398(2009); Gonzá-lez Rosado v. Echevarría Muñiz, 169 D.P.R. 554 (2006); Castro v. Negrón, 159 D.P.R. 568 (2003); Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990); Texidor Díaz v. Tribunal Superior, 94 D.P.R. 666 (1967); Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562 (1966). Disiento del curso que pretende trazar la mayoría en este caso no sola-mente porque lo entiendo errado como cuestión de derecho sustantivo, sino también porque con esta actuación el Tribunal propicia la inestabilidad y precariedad en el ordena-miento jurídico.
Una regla elemental de justicia exige tratar de igual manera a quienes se encuentran en situaciones análogas. De ahí la tradición jurídica que nos obliga a que una vez hayamos resuelto un asunto de determinada manera, la pauta establecida en ese caso deberá guiarnos en el futuro cuando nos confrontemos con asuntos iguales o similares. Esta tradición se asienta sobre varios principios u objetivos jurídicos, a saber: opera como garantía de certeza, de igual-dad ante la ley, de eficacia; constituye, además, un detente a la arbitrariedad en la toma de decisiones y, sobre todo, abona a la percepción de que se actúa justamente. Véanse: R. Aldisert, Precedent: What It Is and What It Isn’t; When Do We Kiss It and When Do We Kill It?, 17 (Núm. 3) Pepp. L. Rev. 605, 627 (1990); E. Maltz, The Nature of Precedent, 66 (Núm. 2) N.C.L. Rev. 367, 368-372 (1988).
Recordemos que nuestras opiniones son parte inte-grante del ordenamiento jurídico. En esta jurisdicción son ley al igual que las aprobadas por la Asamblea Legislativa. Almodovar v. Méndez Román, supra. En virtud de lo cual, no resulta saludable ni deseable para la función judicial que nuestras decisiones aparezcan como variables, contra-dictorias o impredecibles. De ordinario, éstas tienen que ser duraderas y definitivas. Jueces, abogados, la comuni-dad jurídica y el público general tienen derecho a desean- *988 sar en nuestros precedentes para guiarse en la administra-ción de sus asuntos.
Cabe destacar que nuestras opiniones son el resultado del estudio cuidadoso, ponderado e informado de la contro-versia que se nos presenta y de la norma que habremos de pautar. Los asuntos que llegan a nuestra atención son com-plejos y delicados. En muchas ocasiones, la solución dis-puesta en la opinión que publicamos tendrá serias y graves repercusiones para la parte perdidosa. Cómo resolver o qué posición asumir respecto al dictamen que se emite es un proceso que conlleva un delicado y metódico ejercicio de reflexión, que se revela, en ocasiones, muy angustioso. Que poco después del dictamen cambiemos de opinión y pense-mos que la norma adoptada no es la más acertada, o que consideremos que la norma establecida no resuelve todas las posibles permutaciones de la controversia planteada originalmente, o que deseemos explorar otras avenidas, no son razones suficientes para dejar sin efecto un precedente ya establecido. Se requiere mucho más. Se requiere, como hemos dicho en el pasado, que nuestra decisión anterior haya sido tan manifiestamente errónea que no se puede sostener sin violentar la razón y la justicia. Véase García Fernández, Ex parte, 44 D.P.R. 296, 297 (1932). Véanse, además: Capestany v. Capestany, 66 D.P.R. 764, 767 (1946); San Miguel, etc. & Cía. v. Guevara, 64 D.P.R. 966, 974 (1945); Banco de Ponce v. Iriarte, 60 D.P.R. 72, 79 (1942). Cuando abandonamos un precedente ponemos en entredicho los principios axiales del Derecho de trato igual, de estabilidad y certidumbre, y de confianza en nuestro propio quehacer jurídico.
No abogamos por un estado de derecho estático e inmutable. En circunstancias apropiadas, resulta indispensable y deseable la revisión de un precedente y su re-vocación, si es que queremos un ordenamiento jurídico dinámico y viviente. Para ello es necesario, sin embargo, que se den varias circunstancias las cuales están ausentes en esta ocasión. Primero, que la norma adoptada se revele *989 inconsistente y antagónica con otras normas establecidas posteriormente. Segundo, que la norma establecida resulte inoperante por la carencia de estándares objetivos y mane-jables para su aplicación. Tercero, que las condiciones que hicieron posible el primer dictamen cesen o pierdan eficacia. Y, por último, procede la revisión de un precedente cuando el razonamiento jurídico sobre el cual se asentó la norma establecida ya no responde a los valores de una so-ciedad moderna, diversa y plural. Así, de ordinario, el transcurso del tiempo resulta necesario para la ocurrencia de algunas de las circunstancias que ameritan la altera-ción de un precedente. Es decir, la estabilidad del Derecho requiere que nuestros dictámenes se apliquen consistente-mente por un periodo de tiempo pues sólo de esa forma se puede calibrar la eficacia de la norma pautada. Sólo el paso del tiempo nos permite, con rigor jurídico, concluir que la norma pautada ha sufrido tal grado de erosión que se re-quiere su sustitución. Vemos que estos son requisitos seve-ros y rigurosos. Así debe ser.